Dean Ejnard BJORSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16275.

United States Court of Appeals
Ninth Circuit.

Nov. 18, 1959.

Clark A Barrett, San Francisco, Cal.,
for appellant.

Lynn J. Gillard, U. S. Atty., John Kaplan, Donald B. Constine, Asst. U. S.
Attys., San Francisco, Cal., for appellee.

Before BONE and HAMLEY, Circuit
Judges, and ROSS, District Judge.

ROSS, District Judge.

1.  Statement of the Case.

The appellant was indicted on May 1,
1958, for violation of Section 12(a) of
the Universal Military Training and
Service Act, 50 U.S.C.A.Appendix § 462
(a), in that he knowingly refused to report to his Local Board to be given instructions to proceed to a place of employment for the purpose of doing civilian work contributing to the national
health, safety, and interest. He pleaded
not guilty, waived a jury trial, was found
guilty by Judge Roche on August 7, 1958,
and was sentenced to one year's imprisonment on October 15, 1958. It was
stipulated that the appellant failed to
report to his Local Board on October 21,

1957, as ordered. This appeal is from that judgment of conviction.

### Statement of Facts.

The appellant became eighteen years of age on May 2, 1950, and registered with his Local Board in Richmond, California, the same day. On May 11, 1951, he completed his classification questionnaire in which he indicated, inter alia, that he had been an ordained minister of Jehovah's Witnesses since 1946; that he was then attending the Albany (California) Theocratic Ministry School; that he had no business or employment, "aside from Ministry", and that he was conscientiously opposed to participation in war in any form. He was classified I-A by his Local Board, and also by the Appeal Board, after his case had been referred to the Department of Justice for inquiry and hearing with respect to his conscientious-objector claim.

The appellant was subsequently classified 4-F for physical reasons, from August, 1952, to July, 1953.

The Local Board received a second medical Certificate of Acceptability in July, 1953, indicating that he was found fully acceptable for induction into the Armed Forces, and he was classified 1-A again. He refused to submit to induction as ordered, was indicted, tried, convicted, sentenced to pay a $2,000 fine, and given a two year suspended sentence. On March 9, 1954, he was sentenced to two years imprisonment on the basis of his refusal to pay the $2,000 fine.

The Local Board on April 13, 1954, classified the appellant as 4-F by reason of his conviction. After serving ten and one-half months imprisonment, he was released on parole on February 27, 1955. His parole terminated on April 7, 1956.

On May 24, 1956, the Local Board received a Dependency Questionnaire from the appellant, indicating that he had been employed by the American Supply Company, Berkeley, and was earning $80.00 a week.

On June 27, 1956, presumably at the request of the Local Board—though the file does not so indicate—the United States Army Recruiting Main Station in San Francisco sent to the Commanding General of the Sixth Army a "Request for Determination of Eligibility for Induction" concerning the appellant. The request contained a statement by the investigating officer that the appellant was "Considered Acceptable for Military Service." The Commanding General recommended to the Adjutant General, Department of the Army, Washington, D. C., approval of the request on June 28, 1956.

On July 12, 1956, the Joint Induction Screening Group of the Department of the Army at Washington approved the request for a "moral waiver", and on the following day the Secretary of the Army formally approved the request for waiver of the appellant's prior conviction, in the following language:

> "1. Request for waiver of civil record is approved and induction into the Armed Forces (Army, Air Force, Navy, or Marine Corps) is authorized provided otherwise qualified. This is not to be construed as authorization for induction into any armed service not currently accepting personnel for induction."

The Commanding General of the Sixth Army forwarded this letter and the action of the Joint Induction Screening Group to the Army Recruiting District on July 19, 1956.

On July 20, 1956, the original investigating officer signed a certificate of acceptability, noting that the appellant has been "Found fully acceptable for induction into the Armed Forces."

On August 21, 1956, the appellant was again classified 1-A by his Local Board. According to the appellee, he took no appeal from this classification. On August 28, 1956, he sent a letter requesting a personal appearance before the Board; and on the same date he wrote a letter requesting an appeal from the 1-A classification. Following his personal appearance on September 11, 1956, at which time he presented a great deal of documentary evidence concerning his minis-

terial activities, the appellant was reclassified 1-O by the Local Board.

On September 10, 1956, the Local Board received a report from the appellant's employer stating that the appellant worked an average of forty hours a week for the Supply Company, supra. An Occupational Questionnaire dated September 11, 1956, received by the Local Board, indicated that the appellant, according to his own statement at that time, was working forty hours a week for the Supply Company.

On September 21, 1956, the appellant appealed the classification 1-O, claiming to be a minister of religion. The appellant's case was for a second time referred to the Department of Justice for inquiry and hearing respecting the character and good faith of his conscientious objector claim.

On March 22, 1957, the Department of Justice recommended in a letter to the Appeal Board that the appellant be classified 1-O, which was done on July 18, 1957.

The Local Board forwarded SSS Form No. 152, special report for Class 1-O registrants, to the appellant on July 25, 1957, which the appellant stresses was "more than one year after the Secretary of the Army had considered and approved the request for determination of the appellant's eligibility for induction into the Armed Forces. Paragraph two of said special report mentions, for the first time since the appellant's registration in May of 1950, any requirement for civilian work in lieu of induction." The appellant returned this report uncompleted, on August 5, 1957.

On August 10, 1957, the appellant was given three choices of civilian work that he was to perform. He refused all of them on "religious" grounds. At a subsequent meeting with members of the Local Board and the representative of the State Director of the Selective Service, on September 16, 1958, the appellant reaffirmed his position. The next day, the Local Board determined that employment as an institutional helper at the Los Angeles County Department of Charities would be appropriate for the appellant, and requested authority to order him to work there. The Director of the Selective Service System approved this request on October 3, 1957. The letter of transmittal of this authorization from the State Director to the Local Board reads in part as follows:

"A copy of the letter of instructions to the registrant should be mailed to the agency selected at least four days in advance of the date set for the registrant to report to the office."

The appellant's file contains the report of an interview with the appellant on September 16, 1957, at the Local Board, at which time the appellant stated that he could not accept any job offered by Selective Service in lieu of induction,[1] although he did admit that he was not a pioneer minister, and worked forty hours a week in secular employment.

On October 9, 1957, the appellant was ordered to report for civilian work to his Local Board, on October 21, 1957, to be given instructions to proceed to the Los Angeles County Department of Charities. As has already been stated, it was stipulated that the appellant did not so report.

The appellant seems to attach some importance to the concluding paragraph of his "Statement of the Case":

"In the entire Selective Service file, there is only one document that indicated any action by the Los Angeles County Department of Charities. This is the statement of employer found on the bottom of the aforesaid order to report for civilian work. The only notation on this undated statement is the typewritten phrase 'Did Not Report'."

The Court is at a loss as to why counsel regards the above paragraph as

---

1. In a letter to the Local Board on August 25, 1957, the appellant said that if he were to accept work prescribed by Selective Service, he would be serving two masters, and therefore could not accept any types of work offered.

worthy not only of bare inclusion, but of emphatic inclusion in a "Statement of the Case." It is incorporated in the Court's present statement for whatever comfort the appellant may derive from it.

## 2. The Appellant's Argument.

Section 6(m) of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 456(m), does not provide for discretionary waivers of prior felony convictions by the Armed Forces or civilian agencies.

A waiver by the Secretary of the Army, expressly limited to induction into the Armed Forces, does not encompass civilian employment in a municipal agency.

A waiver of a prior felony conviction limited by its terms to induction into the Armed Forces cannot operate as a waiver for civilian employment in lieu of induction.

The appellant's 1-A classification on August 21, 1956, did not eliminate the necessity for a waiver applicable to service in lieu of induction.

The evidence produced at the trial was legally insufficient to support the judgment of guilty.

## 3. The Appellee's Argument.

The appellant has failed to exhaust his administrative remedy. The registrant must go to the "brink" of induction before he can raise any infirmity in his classification. In this case, the appellant was directed to report to the Local Board on October 21, 1957, to be given instructions to proceed to the Los Angeles County Department of Charities. The appellant did not appear at the Local Board, and, therefore, is in the same position as a registrant who does not appear at the Induction Station.

The appellant's proper classification on his release from imprisonment was 4-F. On August 21, 1956, however, the appellant was classified 1-A by his Local Board. If there was any error in stripping the appellant of his 4-F classification, it occurred when he was classified 1-A, and was waived by his failure to appeal. In addition, the appellant further made clear this waiver by appealing his 1-O classification on the sole ground that he was a minister of religion. The orderly administration of the Selective Service laws prevents a registrant from bringing any flaw in his classification to the notice of the court trying him, where no hint of such infirmity was presented to the Local Boards.

The 4-F classification on conviction is not created for the benefit of the felon. This Court has held that where there has been a conviction of a felony, the exemption is permissible but not required. The 4-F classification permissible for a registrant is not created for his benefit, it is created for the benefit of the armed forces.

The whole strain of the appellant's argument that he was wrongly ordered to appear for service is a classic example of a man seeking to profit by his own wrong.

This Court has decided that the military authorities are entrusted with the task of selecting personnel to defend the United States, and if they believe that a registrant would not be suitable because of his prior felony conviction, they are not required to take him. They may, however, waive the disability and in such instances he may be inducted into the armed forces or assigned to work of national importance.

No further waiver, by the Los Angeles County Director of Charities, was necessary in this case.

## 4. The Appellant Has Failed To Exhaust His Administrative Remedy: He Must Go To The "Brink."

We have seen that the appellant was ordered to report for civilian work to his Local Board on October 21, 1957, to be given instructions to proceed to the Los Angeles County Department of Charities. It has been stipulated that he did not so report.

In other words, the appellant failed to exhaust his administrative remedies. He failed to go to the "brink."

In the leading case of Falbo v. United States, 1944, 320 U.S. 549, 552–554, 64 S.Ct. 346, 348, 88 L.Ed. 305, the Court said:

"The registrant may contest his classification by a personal appearance before the local board, and if that board refuses to alter the classification, by carrying his case to a board of appeal, and thence, in certain circumstances, to the President.

"Only after he has exhausted this procedure is a protesting registrant ordered to report for service. If he has been classified for military service, his local board orders him to report for induction into the armed forces. If he has been classified a conscientious objector opposed to noncombatant military service, as was petitioner, he ultimately is ordered by the local board to report for work of national importance. *In each case the registrant is under the same obligation to obey the order. But in neither case is the order to report the equivalent of acceptance for service.* Completion of the functions of the local board and appellate agencies, important as are those functions, is not the end of the selective service process. The selectee may still be rejected at the induction center and the conscientious objector who is opposed to noncombatant duty may be rejected at the civilian public service camp. The connected series of steps into the national service which begins with registration with the local board does not end until the registrant is accepted by the army, navy, or civilian public service camp. *Thus a board order to report is no more than a necessary intermediate step in a united and continuous process designed to raise an army speedily and efficiently.*

"In this process the local board is charged in the first instance with the duty to make the classification of registrants which Congress in its complete discretion saw fit to authorize. Even if there were, as the petitioner argues, a constitutional requirement that judicial review must be available to test the validity of the decision of the local board, it is certain that Congress was not required to provide for *judicial intervention before final acceptance of an individual for national service.* The narrow question therefore presented by this case is whether Congress has authorized judicial review of the propriety of a board's classification in a criminal prosecution for wilful violation of an *order directing a registrant to report for the last step in the selective process.*

"*We think it has not.*" (Emphasis supplied.)

In Estep v. United States, 1946, 327 U.S. 114, 115–116, 66 S.Ct. 423, 424, 90 L.Ed. 567, the Supreme Court put its own gloss upon the Falbo case, supra, pointing out that in the earlier case "we held that in a criminal prosecution * * * a registrant could not defend on the ground that he was wrongfully classified and was entitled to a statutory exemption, where the offense was a failure to report for induction into the armed forces or for work of national importance."

"We found," the Supreme Court continued, "no provision for judicial review of a registrant's classification prior to the time when he had taken all the steps in the selective process and had been finally accepted by the armed services."

In Williams v. United States, 9 Cir., 1953, 203 F.2d 85, 88, certiorari denied, 1953, 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408, we said:

"Furthermore, as the Supreme Court pointed out in Estep v. United States, supra, the Selective Service Act requires a selectee to come to the *brink* of induction before he may obtain a judicial review of his classification. Congress, in setting up the selective process, sought to avoid delays from *premature litigious interruption.* See Falbo v. United States, supra. Prior to the time when a

selectee is found acceptable any injury resulting from the action of his Board has not materialized, since he might be rejected. But when the moment arrives to take the oath, administrative relief from injury to his constitutional rights is not available. He must then take the symbolic 'one step forward' which signifies that he has complied with all the steps in the selective process. *Only then will judicial review of an alleged violation of a selectee's constitutional rights by his Local Board be available.* (The Falbo case cited.) Appellant did not comply with all the steps in the selective process. *Therefore, he may not attack his classification or the Board's procedure.*" (Emphasis supplied.) [2]

5. The 4-F Classification On Conviction Of A Felony Is Not Created For The Benefit Of The Registrant-Felon, But For The Benefit Of The Armed Forces.

■ In the instant case, a convicted felon seems to be striving to profit from his own wrong. Perhaps he is laboring under the delusion that the Classification "4-F", in cases of this kind, is granted for the benefit of the criminal. The Court has already exploded such a fallacy.

In the recent case of Korte v. United States, 9 Cir., 1958, 260 F.2d 633, 637, certiorari denied, 1959, 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301, we used the following language:

"We conclude that Section 6(m) of the Act, (50 U.S.C.A.Appendix, § 456(m)) is not a *direction* on the part of Congress to *exempt* from training and service those persons convicted of felonies, but on the contrary is an injunction not to defer from training and service those persons who have been convicted of misdemeanors. *Where there has been a conviction of a felony, the exemption is permissible but is not re-*

*quired. The IV-F classification permissible for a registrant is not created for his benefit, it is created for the benefit of the armed forces.* The military agencies are entrusted with the task of selecting personnel to defend the United States, and if they believe a registrant would not be suitable because of his prior felony conviction, they are not required to take him. They may, however, waive the disability and in such instance he may be inducted into the armed forces or assigned to work of national importance." (Emphasis supplied.)

6. The Evidence Supported The Judgment Of Conviction.

■ Finally, the appellant insists that "The evidence produced at the trial was legally insufficient to support the judgment." Despite this insistence, however, in his discussion of this point the appellant merely harks back to the claim of the lack of "any proper waiver by the Los Angeles County Department of Charities." We have fully discussed this subject of waiver, and need not repeat our comments here.

Nor is it necessary to dwell further on the sufficiency of the evidence. What we said in Shaw v. United States, 9 Cir., 1959, 264 F.2d 118, 120, is peculiarly applicable here:

"In cases arising under the Universal Military Training and Service Act, as elsewhere in the law, an appellate court is not required to search the record with a microscope, in an effort to find minute but harmless flaws in the work of administrative bodies or of the lower courts. In the instant case, that is precisely what the appellant would have us do. In Witmer v. United States, 348 U.S. 375, at pages 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428, the Supreme Court has admonished us that 'It is well to remember that it is not for the courts to sit as super draft

2.  See also United States v. Sutter, D.C.Cal.1954, 127 F.Supp. 109, 117.

boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determination. (Case cited.) The classification can be overturned only if it has 'no basis in fact.' "

### 7. Conclusion.

The appellant has failed to exhaust his administrative remedy. He did not report to his local board, to be given instructions to proceed to the Los Angeles County Department of Charities. He neglected to go to the "brink." He did not take "the last step."

The 4-F classification for conviction of a felony is not a loophole for the registrant-felon, but to keep convicted criminals out of the Armed Forces. This barrier, however, may be waived by the Armed Forces, but not by the ex-convict. In the instant case, the approval of the Secretary of the Army of the request "for waiver of civil record" in the appellant's case, was sufficient. No waiver by the Los Angeles County Department of Charities was necessary.

The evidence amply supports the judgment of conviction.

Accordingly, the judgment of the Court below is affirmed.