David Leroy **DANIELS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 20311.

United States Court of Appeals
Ninth Circuit.

Jan. 17, 1967.

J. B. Tietz, Los Angeles, Cal., for appellant.

Manuel L. Real, United States Atty., John K. Van de Kamp, Asst. United States Atty., Chief, Crim. Div., J. Brin Schulman, Asst. United States Atty., Asst. Chief Crim. Div., Robert M. Talcott, Asst. United States Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, JERTBERG, MERRILL, KOELSCH, BROWNING, DUNIWAY and ELY, Circuit Judges.

HAMLEY, Circuit Judge:

David Leroy Daniels, classified in the Selective Service System as a conscientious objector opposed to combatant or non-combatant service in the Armed Forces, failed to obey an order of his local board to appear before it for assignment to a place of civilian employment in lieu of induction. He was indicted for having knowingly failed to report to the board, in violation of section 12(a) of the Universal Military Training and Service Act (Act), 62 Stat. 622 (1948), 50 U.S.C., Appendix, § 462(a) (1964). After a non-jury trial, Daniels was convicted and sentenced, and takes this appeal.

The material facts are not in dispute. On November 10, 1960, Daniels registered in Fresno County, California, with Local Board 68 of the Selective Service System (Board). In his classification questionnaire, filed on October 9, 1963, Daniels stated that he was ordained to the ministry of Jehovah's Witnesses on July 30, 1958. Since that time, Daniels stated, he has been associated with the Kerman, California congregation of Jehovah's Witnesses. He further stated that it was his goal to become a full-time "pioneer" of Jehovah's Witnesses. A pioneer, Daniels explained, is one who devotes at least one hundred hours a month to preaching house to house and related activities. In an attached letter, Daniels stated that he was then a "vacation pioneer," which required him to spend seventy-five hours a month in preaching and teaching.

On October 21, 1963, Daniels filed a completed conscientious objector form with the Board. On November 19, 1963, the Board classified Daniels as I-O.[1] Daniels wrote to the Board objecting to the I-O classification, and requesting reclassification as a minister of religion or divinity student. Such classification, designated as IV-D, is provided for in 32 CFR § 1622.43. See also, sections 6(g) and 16(g) of the Act, 62 Stat. 611, 624,

---

1. This classification is provided for in 32 CFR § 1622.14(a), one of the regulations of the Selective Service System. This regulation reads:

"(a) In Class I-O shall be placed every registrant who would have been classified in Class I-A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces."

50 U.S.C., Appendix, §§ 456(g), 466(g).[2] Daniels then presented his position in a personal appearance before the Board, as provided for in 32 CFR § 1642.2. The Board, however, declined to reopen the case, and again classified him I-O.

On June 2, 1964, Daniels submitted to a preinduction physical examination and was found fully acceptable for induction into the Armed Forces. He then appealed his classification to the Appeal Board pursuant to 32 CFR § 1626. The Appeal Board rejected Daniels' contention and, on July 23, 1964, classified him I-O. On July 30, 1964, the Board mailed Daniels a report form in which he was asked to list, in order of preference, three types of approved civilian work selected from a list on file at the Board's office. The selections were to indicate types of work which he was qualified to perform, and which he offered to perform in lieu of induction into the Armed Forces.

Daniels returned the form on August 11, 1964, refusing to list any preferences. Instead, he wrote on the form: "I cannot perform any such work due to my standings and beliefs." On September 8, 1964, the Board sent Daniels a letter offering him three types of civilian work in lieu of induction.[3] He returned the letter of September 21, 1964, without designating any of these types of work. In lieu thereof, he signed a form statement which was a part of the letter, reading: "I do not wish to perform any of the types of work listed above, the reasons for which are stated on the reverse side of this letter." On the reverse side he stated his conscientious objection to such work.

On November 4, 1964, the Board notified Daniels to attend a meeting with the Board and a representative of the State Director of the Selective Service System, to be held on November 16, 1964. The purpose of this meeting, which was called pursuant to 32 CFR § 1660.20(c), was to attempt to agree upon a type of civilian work which Daniels would perform in lieu of induction. At this meeting Daniels stated that he supposed that he was capable of doing any of the types of work referred to in note 3. He further stated, however, that he would not accept any of these types of work, or any approved job offered by the Board, because to do so would conflict with his belief as a conscientious objector.

On December 11, 1964, the Board ordered Daniels to report to the Board on January 4, 1965 "where you will be given instructions to proceed to the place of employment." The employment designated was the Los Angeles County Department of Charities. The order advised Daniels that he was to remain in such employment for twenty-four consecutive months or until such time as he was released or transferred by proper authority. The order also advised him that failure to report to the Board at the hour and on the day named in the order, or to proceed to the place of employment pursuant to instructions, would constitute a violation of the Act, punishable by fine or imprisonment or both.

2. Under classification I-O, Daniels, as one who was conscientiously opposed to participation in non-combatant service in the Armed Forces, would have been subject to a Board order requiring him to perform, for a period of twenty-four months, "civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate. * * *" See section 6(j) of the Act, as amended by section 1(q) of the Act of June 19, 1951, 65 Stat. 75, at 86, 50 U.S.C., Appendix, § 456(j) (1964). Under a IV-D classification, however, Daniels would not only have been exempt from induction, but also would not have been subject to a Board order requiring him to engage in selected civilian employment for any period of time. See section 6(g) of the Act, 62 Stat. 611, 50 U.S.C., Appendix, § 456(g).

3. This was done pursuant to 32 CFR § 1660.20(b). The types of work offered to Daniels were: institutional helper, Los Angeles County Department of Charities; truck driver helper, Goodwill Industries, Los Angeles; and Psychiatric technician trainee, Atascadero State Hospital, Atascadero, California.

Daniels did not report to the Board on January 4, 1965, and did not report to the assigned employer.

At the trial Daniels did not defend on the ground that he had reported to the Board as ordered, or that his failure to report was inadvertent. His only defense was that he was improperly classified I-O, conscientious objector, and that he should have been classified IV-D, as a minister of religion or divinity student.[4]

After Daniels had cross examined two Government witnesses, but before he could produce witnesses of his own in support of his contention that he had been incorrectly classified, the Government objected that such a defense was not available to Daniels because he had not complied with all of the prescribed steps in the selective process. In support of this contention, the Government relied primarily on Bjorson v. United States, 9 Cir., 272 F.2d 244 (1959).

The district court upheld the Government's objection holding, in effect, that by reason of Daniels' failure to comply with all the prescribed steps in the selective process, he could not defend on the ground that his classification order was invalid. The court struck testimony already received on this point, rejected an offer of proof made by Daniels' counsel,[5] and found Daniels guilty as charged. This appeal followed.

Daniels contends here that *Bjorson*, apparently relied upon by the trial court, is distinguishable and that, in any event, it was wrongly decided.

The facts in *Bjorson* are remarkably similar to those of the case now before us. Dean Bjorson was a Jehovah's Witness who had been classified I-O, conscientious objector opposed to either

combatant or non-combatant service in the Armed Forces, but who had sought without success a classification as a minister of religion. After following essentially the same procedure as in the *Daniels* case, Bjorson's local board ordered Bjorson to report to it on October 21, 1957, to be given instructions to proceed to the Los Angeles County Department of Charities. He did not do so and was brought to trial on the identical charges which Daniels faces.

At his trial, Bjorson defended on the ground that the purported waiver of a prior felony conviction (a previous refusal to submit to induction), which was necessary to make him eligible for induction, was ineffectual with respect to an order requiring civilian employment by a conscientious objector. On appeal, the Government contended that Bjorson had failed to take the prescribed steps in the selective process and therefore could not assert this defense. This court agreed, saying (272 F.2d at page 250):

> "The appellant has failed to exhaust his administrative remedy. He did not report to his local board, to be given instructions to proceed to the Los Angeles County Department of Charities. He neglected to go to the 'brink.' He did not take 'the last step.'"

We perceive no substantial distinction between *Bjorson* and the case now before us. Under *Bjorson* we would have to hold that Daniels had not taken the prescribed intermediate steps in the selective process and therefore could not, in this criminal prosecution, question the validity of his classification as I-O. We therefore turn to a consideration of Daniels' argument that *Bjorson* was wrongly decided.

4. In support of this defense, counsel for Daniels made the following offer of proof: "If permitted to testify the defendant would testify that his vocation is the ministry, that anything else he does to support himself is to earn bread for his vocation; that it is his lifetime work and that everything else is secondary to it; that in everything he did that was so, that he took the kind of jobs that permitted him to carry on his vocation in the evenings and on the weekends and he took the kind of job that permitted him to do as much pioneering as possible."

5. See note 4, supra.

The principal case relied upon by this court in *Bjorson* was Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L. Ed. 305 (1944). On November 12, 1942, Nick Falbo, classified as a conscientious objector opposed to either combatant or non-combatant service in the Armed Forces, was charged with wilful failure to obey the local board's order to report for assignment to work of national importance. As the law then stood, such work was performed at a "civilian public service camp."

At his trial, Falbo admitted that his refusal to obey the order was wilful, but sought to defend on the ground that he should have been classified as a minister. He was convicted and the Third Circuit affirmed (135 F.2d 464). In the Supreme Court, the questions considered were whether the order to report to the local board for assignment of civilian work was the final, or only an intermediate step in the selective process, and whether Congress had authorized judicial review of the propriety of a board's classification in a criminal prosecution for wilful violation of an order directing a registrant to report for the last step in the selective process.

In considering whether the board order to report for assignment of work was a final or an intermediate step in the selective process, the Supreme Court took into account the Selective Service System procedures then in effect. In 1942, a conscientious objector opposed to combatant or non-combatant service in the Armed Forces was assigned to a civilian camp, but was subject to rejection after he reached the camp if he was not physically and mentally fit. It was within the registrant's power to secure a physical examination by the camp physician by indicating a change in his physical condition. See Dodez v. United States, sub nom. Gibson v. United States, 329 U.S. 338, 344, 67 S.Ct. 301, 91 L.Ed. 331,

note 8. It could not be known in advance whether the registrant assigned to a civilian camp would demand such an examination. It followed that until this was determined, it could not be known finally and irrevocably whether he would be " 'accepted for work of national importance.' " See Dodez, at 345, 67 S.Ct. at 304, analyzing Falbo.

The Supreme Court therefore held, in *Falbo*, that since such a conscientious objector could be rejected at the civilian public service camp, the board's order to report for assignment for such work was "no more than a necessary intermediate step" in the continuous selective process, which was not completed until the last possibility for rejection had been exhausted.

Having so determined, the Supreme Court affirmed the conviction of Falbo, holding that Congress had not authorized judicial review of the propriety of a board's classification in a criminal prosecution for wilful violation of an order directing a registrant to report for the last step in the selective process.

Daniels correctly points out, however, that the selective service procedures, which led the *Falbo* court to conclude that a board order to report for a civilian work assignment was only an intermediate step in the selective process, were changed shortly thereafter. The Supreme Court decision in *Falbo* was announced on January 3, 1944. On January 10, 1944, one week after the *Falbo* decision came down, the Selective Service System regulations were changed to require that pre-induction physical examinations be given before a registrant was ordered to report for induction. These changes eliminated the previous provision for physical examination by the camp physician on indication of changed conditions and consequent possible rejection at the camp.[6]

---

6. Instead, as pointed out in *Dodez*, 329 U.S. at 348, 67 S.Ct. at 306 the revised regulations stated simply that "(a), when the 'assignee' had reported to the camp, the camp director should *complete the Order to Report* for Work of National Importance (Form 50)'; and (b) place, as specified, on the assignee's papers, 'a statement that [the] registrant *is accepted*' for work at the designated camp,

Daniels argues that cases involving this type of conscientious objector, which were decided after this change in the Selective Service regulations, should not be controlled by *Falbo*. He calls attention to the fact that in Dodez v. United States sub nom. Gibson v. United States, 329 U. S. 338, 67 S.Ct. 301, 91 L.Ed. 331, decided on December 23, 1946, the Supreme Court distinguished *Falbo* on the basis of this and other changes in the regulations, and granted Dodez a new trial. Daniels contends that the *Dodez* result would have been reached in *Bjorson*, decided on November 18, 1959, if *Dodez* had been considered in *Bjorson*. In *Bjorson* neither party referred to *Dodez* in their appellate briefs. Daniels also points out that the regulations governing his case are substantially the same as those which were in effect when *Dodez* was decided, except that designated civilian employers have replaced civilian public service camps.

In *Dodez*, the Supreme Court held that the changes in regulations referred to above had removed any chance the registrant formerly had to secure rejection by demanding examination at the camp, and left only the formal entries referred to in note 6 to be there performed. The Court concluded that the revised regulations left nothing to be done by camp officials or by the registrant after reaching the camp "which might result in his being rejected or released from the duty to remain and perform the further duties imposed on him." (329 U.S. at 349, 67 S.Ct. at 307.) The Court therefore held that Dodez had, without reporting to the local board, performed "all requirements affording possibility of relief * * *," and that he was not foreclosed by the *Fal-*

*bo* decision from defending, at his criminal trial, on the ground that his classification was invalid.[7]

We agree with Daniels that our ruling in *Bjorson*, that the registrant was precluded from defending on the ground that his classification was invalid, is contrary to the holding in *Dodez*. As previously indicated, the relevant facts of the two cases are essentially the same. The only important change in the regulation between *Dodez* and *Bjorson*—replacement of civilian camps with selected civilian employers—tends to make *Bjorson* a stronger case for application of the *Dodez* holding. In 1942, the Selective Service had responsibility and authority for the supervision and control over work projects at such camps. (32 C.F.R. § 653.12 of the then current regulations), but today the Selective Service has no like responsibility and authority with regard to work performed by I-O registrants for designated civilian employers.

In *Bjorson*, in addition to *Falbo*, this court also relied upon Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567, decided prior to *Dodez*, and Williams v. United States, 9 Cir., 203 F.2d 85, decided after *Dodez*. In neither *Estep* nor *Williams*, however, did the local board classify the registrant as a conscientious objector or order him to report to the board for assignment to civilian work. In both cases, the board ordered the registrant to report to a designated induction center for induction into the Armed Forces.

■■■■ Estep reported for induction, was finally accepted, but refused to submit to induction. Williams refused to report for induction. Thus, neither case

stating also the date and place of acceptance; (c) the local board, 'upon receiving notice that a registrant *has been accepted for work*,' should not 'change his classification but shall note the fact *of his acceptance*' on Form 100; and (d), if the assignee failed to report when required, the camp director was to notify the Director of Selective Service." (Emphasis in original.)

For a summary of the changes in regulations after *Falbo*, see Dodez v. United

States, sub nom. Gibson v. United States, 329 U.S. 338, 346–349, 67 S.Ct. 301, 91 L.Ed. 331.

7. In *Dodez* the Government conceded, and the Court held properly so, that the changes in the Selective Service regulations relieved Dodez from the necessity of going to the camp in order to complete the administrative process.

involved the question of whether a registrant, classified like Bjorson and Daniels, could contest his classification in a subsequent criminal prosecution for failure to obey a board order to report to it for assignment to civilian work.[8]

■ In setting up the selective process, Congress sought to avoid delays caused by premature litigious interruption. *Williams*, supra, 203 F.2d at 88. Only when the registrant has complied with all the steps-in the selective process is he entitled to judicial review of his classification. It is evident, however, that one who has been classified I-O, a conscientious objector who is opposed to participation in both combatant and non-combatant service in the Armed Forces, need not and cannot take the same steps in the selective process as one who is classified for induction into the Armed Forces for combatant or non-combatant service. The former may therefore have the right to judicial review of his classification sooner than the latter.

■ A conscientious objector who is classified I-O, and ordered to report to a civilian employer in lieu of induction, remains a civilian and is not subject to military discipline or authority. *Dodez*, supra, 329 U.S. at 338, 67 S.Ct. 301. However, one who is ordered to report for induction for combatant or non-combatant service is subject to military discipline or authority. More importantly, one classified I-O is not subject to rejection by an arm of the United States Government once his orders are sent to him to report to a particular civilian employer.

■ Naturally, he may be rejected by a particular employer, who is not re-quired by statute to accept the new employee. In such case, however, the rejection is not by an arm of the United States Government and, in any event, one so rejected could be readily reassigned to another civilian employer. Neither a rejection by a civilian employer nor a reassignment by the board to another employer would have anything to do with the selective process. When one classified I-O has exhausted his appeals to the Selective Service agency and has been sent an order to report to the board for assignment to a civilian employer, he has received a final order and the selective process is at an end.

Although regulations have required that a physical examination be given to registrants within 120 days of the time they report for induction, it has been held by this court that there is no such requirement that the physical examination of class I-O conscientious objectors be within a certain period of time prior to commencement of civilian work. Taylor v. United States, 9 Cir., 285 F.2d 700, 702–703. In United States v. Manns, 7 Cir., 232 F.2d 709, 712, the court stated that the regulation (32 CFR § 1660.20) "clearly does not require that the registrant be given a physical examination within ten days of the time he is required to submit a list of the kind of civilian work he is qualified to do and is willing to perform." (Citing a June 19, 1952 Selective Service Administration Operations Bulletin No. 70) See Miller v. United States, 6 Cir., 169 F.2d 865, 867. The holding in *Taylor,* supra, eliminates any possible chance of rejection of the class I-O conscientious objector at the selective service center.[9]

8. It is now generally held that a registrant must obey an order to report for induction into the Armed Forces before he may defend on the ground that his classification is illegal. The reason for this rule is that one ordered to report for induction may yet be found unacceptable for military service. The Supreme Court held that Estep, who had reported for induction, could raise the defense of invalid classification. This court held that Williams, who did not report for induction, could not raise such a defense. See Moore v. United States, 9 Cir., 302 F.2d 929, 930.

9. Neither the order of December 11, 1964, requiring Daniels to report to the Board for work of national importance, nor the Board order of January 4, 1964, nor the regulations commanding a compliance with orders of this character, provided for Daniels to be reexamined at the Los Angeles Department of Charities.

■ For the reasons stated above, we disapprove our contrary holding in Bjorson v. United States, supra. We now hold that a class I-O conscientious objector, who has passed his physical examination, exhausted his board appeal remedies, and been ordered to report to the board for assignment to a civilian employer, may defend a criminal action for failure to so report on the ground that his classification is invalid. Such a person has reached the "brink" in the selective process without going through the formality of reporting to the board or the civilian employer.[10]

The Third Circuit reached the same result in United States v. Sturgis, 3 Cir., 342 F.2d 328. The facts in *Sturgis* were essentially the same as those in *Bjorson*. Defendant was indicted for wilfully failing to report for assignment at the Norristown State Hospital in lieu of induction. The court held that "(t)here can be *no question* of the appellant's right to judicial review here, as he has complied with all the steps in the selective service process." (342 F.2d at 330) (Emphasis added.) See United States v. Willard, D. C.N.D.Ohio, 211 F.Supp. 643, 649–650; affirmed, United States v. Willard, 6 Cir., 312 F.2d 605, where a district court also reached the same result, although on a different line of reasoning.

■ The problem discussed above has been referred to by counsel, and was referred to by this court in *Bjorson*, as one involving exhaustion of administrative remedies. It is really not that at all. An administrative remedy is a procedure for allowing a person to assert a right to some kind of relief before an administrative agency. When a registrant classified I-O has been ordered to report to his board for assignment to a civilian employer, he has no further remedy before the board, except possibly where he claims a change of circumstances since his last classification order entitling him to a reclassification.[11] If such a registrant goes to his assigned employer and is rejected by that employer, such rejection would not be an administrative act, nor would it be responsive to any assertion of right by the registrant.

■ *Falbo* did not speak in terms of exhaustion of administrative remedies, but dealt with the problem of whether Congress had authorized judicial interposition in the selective process before the final step in that process had been reached. The policy given effect in *Falbo* was that, even after administrative remedies have been exhausted, a court will not examine the validity of a classification until the registrant establishes that he has been aggrieved. A registrant is aggrieved only when the selective process is at an end and there is no longer a possibility of rejection as a part of that process. That same policy was applied in *Dodez* and is applied here in *Daniels*, but the result is different from *Falbo* due to a change in procedure since *Falbo*.

During oral argument, counsel for Daniels contended, for the first time in this case, that it was unfair for Selective Service System officials not to advise Daniels, at the time he was ordered to report to the Board for his civilian work assignment, that in a prosecution for failure to report to the Board he could not question his classification, and that he could safely report to the selected employer without waiving his right to question his classification. In essence, Daniels asserts that failure of the agency to give him notice of this kind before the day on which he was to report to the Board, deprived him of due process of law.

In view of our holding announced above, that Daniels is entitled to assert

---

10. We do not overrule *Bjorson in toto*, because in that case the court also went to the merits, holding that the classification was not invalid. More than likely this is why the Supreme Court denied

certiorari. See 362 U.S. 949, 80 S.Ct. 859, 4 L.Ed.2d 867.

11. Daniels does not challenge his classification on the ground that there was such a change of circumstances.

his defense based on the contention that the classification is invalid, we need not decide this additional question.

Reversed and remanded for a new trial.