UNITED STATES of America,
Appellee,

v.

Darrell Edward HUGHES, Appellant.

No. 23628.

United States Court of Appeals
Ninth Circuit.

July 25, 1969.

William Hardy (argued), San Jose, Cal., Clark A. Barrett (argued), San Mateo, Cal., for appellant.

Paul G. Sloan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and KILKENNY, District Judge.*

---

* The Honorable John F. Kilkenny, United States District Judge for the District of Oregon, sitting by designation.

HAMLEY, Circuit Judge:

Darrell Edward Hughes, a I–O conscientious objector in the selective service system, appeals from his conviction for failing to report for assigned civilian work in lieu of induction into the Armed Forces. Most of the questions he presents on appeal relate to the facts that: (1) the clerk of the local board issued the "Order to Report," not on the basis of an express order of the board, but upon the basis of a purportedly implied order, and (2) no board order to report for civilian work, express or implied, was made after the approval and authorization of the Director of Selective Service had been received. We are accordingly confronted with problems similar to those dealt with by this court in Brede v. United States, 9 Cir., 396 F. 2d 155 (Brede I), as modified on rehearing, 400 F.2d 599 (Brede II).

Hughes was classified I–O on January 14, 1965.[1] He underwent a physical examination on April 5, 1966, and was found acceptable. Normal preliminary procedures were then followed by the local board preparatory to ordering Hughes to report for assigned civilian work in lieu of induction. On July 26, 1966, the clerk of the local board mailed Hughes a notice to appear at a meeting with the local board on August 9, 1966. According to the notice, the purpose of the meeting, to be held in accordance with 32 C.F.R. § 1660.20(c), was to enable a representative of the State Director to meet with Hughes and the local board. At such meeting, the representative would offer his assistance in reaching an agreement as to the type of civilian work Hughes should perform in lieu of induction.

The meeting was held as scheduled and Hughes there stated that because it would compromise his religious faith as a member of Jehovah's Witnesses, he would decline to perform any civilian

---

1. The authority for, and consequences of, this conscientious objector classification are explained in Daniels v. United States, 9 Cir., 372 F.2d 407, 408–409, notes 1 and 2.

work assigned to him by the selective service system. Hughes acknowledged that he had received from the board a list of three types of civilian work which had been designated by the State Director as available and appropriate, and had previously declined to perform any of the jobs so offered.

At this meeting, Hughes also stated that there was no physical reason why he could not perform the types of work offered. Hughes advised the board that he was then employed as a tile setter's helper with a weekly wage of $180.00. In a form statement which Hughes signed at this meeting, he stated that he would refuse to report for work of national importance if ordered to do so by any local board.

On August 9, 1966, immediately following this meeting with Hughes, the local board determined, after reviewing the information obtained at that meeting and the registrant's complete file, that work as an Institutional Helper at the Los Angeles County Department of Charities was appropriate to be performed by the registrant and was available.[2]

The local board took no further action pertaining to Hughes until February 9, 1967. On that day, the board forwarded his selective service file to the California Headquarters of the Selective Service System, for transmittal to the National Director of Selective Service. In its letter of transmittal, the local board advised that Hughes' number had been reached for induction, but that he was classified I–O. The local board further advised that it had determined that work by Hughes as an Institutional

Helper at the Los Angeles County Department of Charities was appropriate and available. The board's letter concluded: "It is requested that the Director approve and authorize the ordering of subject registrant to perform the above specific work."

On March 13, 1967, the State Headquarters transmitted the file and the local board's letter of February 9, 1967, to the National Director, stating: "The local board requests authority to so order him." On March 23, 1967, the National Director wrote to the State Director. The relevant part of this letter is quoted in the margin.[3]

A representative of the State Director wrote to the local board on March 28, 1967, returning Hughes' file and enclosing the National Director's letter of March 13, 1967. The letter of the State Director advised that the National Director's letter bears the latter's " * * * approval for the local board to order the registrant to report for work in lieu of induction as an Institutional Helper at the Los Angeles County Department of Charities. * * *" This letter also stated: "The registrant should be ordered to report to his local board office on a date and hour other than any day preceding a Saturday, Sunday, or a holiday."

The local board did not meet to further consider Hughes' case after the letter of March 28, 1967 was received from the State Director. On April 5, 1967, an "Order to Report for Civilian Work and Statement of Employer" (SSS Form 153), over the signature of the clerk of the local board, was mailed to Hughes.[4]

---

2. This was one of the three types of work which had been submitted to Hughes so that he could select one to be performed by him. The wage for doing such work is $10.72 for an eight-hour day based on a forty-hour week.

3. "Reference is made to your letter in which you requested my approval, under section 1660.20(d) of the Selective Service Regulations, of an order by the local board to require the above-named registrant to perform civilian work in lieu of induction.

"The issuance of an order by the local board requiring the above-named registrant to perform the type of civilian work deemed appropriate for him is approved. (See paragraph 6, Local Board Memorandum No. 64.)"

4. On June 8, 1961. the local board had adopted a resolution authorizing all clerks of the local board to sign all selective service forms, except those designated for the signature of local board members only, "for the use of Selectees."

This document first recites that Hughes had been found acceptable for civilian work contributing to the maintenance of the national health, safety, or interest, and that he had been assigned as an Institutional Helper at the Los Angeles County Department of Charities. The document then states:

> "You are ordered to report to the local board named above at 8:00 a.m. on the 17th day of April, 1967, where you will be given instructions to proceed to the place of employment. You are ordered to report for employment pursuant to the instructions of the local board, to remain in employment for twenty-four (24) consecutive months or until such time as you are released or transferred by proper authority."[5]

Hughes did not report to the local board office on April 17, 1967, for such instructions. Accordingly, on that date the clerk of the local board mailed the instructions to Hughes, advising that he was to report to the Los Angeles County Department of Charities no later than April 21, 1967. The local board later received advice from the latter employer that Hughes had not reported by April 27, 1967.

On May 4, 1967, and without additional authorization from the local board, another SSS Form 153 "Order to Report for Civilian Work and Statement of Employer" was sent to Hughes. This document ordered Hughes to report to the local board on May 15, 1967, for instructions. Again Hughes failed to appear for instruction and, on that date, the clerk of the board once more mailed the instructions to Hughes. He was told to report to the civilian employer no later than May 19, 1967. Hughes did not report. The indictment under which Hughes was convicted charged a violation of the order of May 15, 1967.

We start with the acknowledged proposition that the "Order to Report," dated May 4, 1967, is ineffective, and cannot serve as a basis for conviction, unless it was authorized by a valid order of the local board. Hughes argues that there was no valid order of the board both because the board took no action after receiving the approval of the National Director, and because any action it took prior thereto did not constitute an express order to report duly entered in the minutes of the board.

In *Brede II*, this court held, in effect, that in an "appropriate case" the action of a local board taken prior to obtaining approval and authorization by the Director, and duly recorded in the minutes, determining that certain work is appropriate, followed by a board request of the Director to approve and authorize the registrant to perform the specified work, may constitute an implied conditional order to report for such work, and that upon the fulfillment of the condition, namely the approval of the Director, the act of the clerk of the local board in signing and mailing the "Order to Report," is ministerial in character and authorized by a valid board order.

Hughes argues, in effect, that apart from the question of whether this is an "appropriate case" for a determination that the local board entered a valid implied conditional order, a matter to be discussed below, *Brede II* is in error in holding that there can ever be an implied conditional order of this kind.[6] Specifically, Hughes contends that a board order to report must be in express terms, it must be entered after the approval and authorization of the Director has been received, and the minutes of the board must show that an express order to report was entered after such au-

5. This document concludes:

> "Failure to report at the hour and on the day named in this order, or to proceed to the place of employment pursuant to instructions, or to remain in this employment the specified time will constitute a violation of the Universal Military Training and Service Act, as amended, which is punishable by fine or imprisonment or both."

6. Acceptance of this view would, of course, require the overruling of *Brede II*.

thorization and approval had been received.

■ We adhere to the holding of *Brede II* that, in an appropriate case, a board order to report for civilian work, conditioned upon the obtaining of the Director's approval and authorization, may be implied, and constitutes a valid board order authorizing the clerk of the board to issue an "Order to Report" after such approval and authorization has been received. See United States v. Crowley, 4 Cir., 405 F.2d 400, 404.

Neither the statutes nor the regulations specifically state that the board's determination that a I–O registrant should report for civilian work must be in express terms and so recorded in the minutes of the board. If under the circumstances of a particular case, (1) it is a rational and necessary implied term of a board determination as to availability and appropriateness of specified work coupled with a request for approval and authorization for the ordering of the registrant to perform such work, that (2) upon receiving such approval and authority the registrant should report for civilian work, then (3) there has been the "critical exercise of administrative judgment" by the board (to employ the language of *Brede II*) to which the registrant is entitled.

■ Hughes was not subjected to the hazard of personally construing the board's determination, and request for approval and authorization, as an implied conditional order to report. He received a document which, in express terms, ordered him to report. That document was not issued until the Director's approval and authorization had been received. Hughes did not disregard this "Order to Report" because he thought it was not authorized. He did not examine the minutes of the local board or otherwise question the authority of the clerk to issue the "Order to Report." He disregarded the order, not because of any defect in the board authorization, but because of his religious convictions. He informed the board that he would not obey an order to report, whatever civilian employer was designated [7].

■ The applicable regulation, 32 C.F.R. § 1660.20(d), provides that where, as here, the necessary preliminary steps have been taken, " * * * the local board with the approval of the Director of Selective Service, *shall* order the registrant to report for civilian work. * * * " (Emphasis supplied.) The imperative "shall" indicates that, in the absence of intervening circumstances (not present here), the local board had no alternative but to order Hughes to report, once the Director's approval and authorization had been received. Therefore issuance of the "Order to Report" was, absent intervening circumstances, ministerial in character. It could appropriately be performed by the clerk of the board. For the same reason, it is acceptable for the board to determine expressly, or by implication, prior to receiving such approval and authorization that, if such approval and authorization is thereafter received, an "Order to Report" shall be sent to the registrant.

■ It is true that Local Board Memorandum No. 64, issued by the National Director of Selective Service, as it read at the time Hughes' case was processed before the local board, provided that after the Director transmits his approval and authorization to the local board, the latter " * * * may *then* proceed to order the registrant to report for civilian work. * * * " (Emphasis supplied.)

---

7. The disregard of administrative regulation is not justified on the ground that the registrant is expected to refuse induction. See Briggs v. United States, 9 Cir., 397 F.2d 370, 374. There is, however, no showing that Hughes' local board deviated from normal and required procedures because of Hughes' statement that he would not honor any board order to report for civilian work. The fact that Hughes did not refuse to report because he believed the board had not authorized the order is relevant here because it shows that he was not misled by the manner in which the board proceeded.

In our opinion, the quoted words refer to the time of issuance of the order to the registrant and not to the time the board must make its determination. This construction of Memorandum No. 64 finds support in the way in which the Memorandum was thereafter amended to obviate questions of this kind in the future.[8]

The views expressed above lead us to reject, without additional discussion, a variety of arguments, noted in the margin, advanced in support of the proposition that the *Brede II* pronouncements referred to above should be overturned.[9]

In *Brede II*, this court also gave consideration to the circumstances under which it may be appropriate for the court to determine, in a prosecution for failure to report for civilian work, that the "Order to Report" was duly authorized by a valid implied conditional board order. We there held, in effect, that this would be appropriate where, in the light of a trial court showing of administrative construction and practice, or a showing of the understanding of the local board, the conclusion is warranted that what the board did represented, at the time it so acted, the required critical exercise of its administrative judgment.

■ The showing thus referred to means no more than that the Government must show that there is a consistent administrative practice on the part of the local board to: (1) intend that its determination of the availability and appropriateness of specified civilian work, coupled with a request for the Director's approval and authorization, shall constitute an order for the registrant to report for such work if approval and authorization are obtained, and (2) intend that, upon receiving such approval and authorization, the clerk of the board should, absent intervening circumstances requiring an exercise of discretion by the board, perform the ministerial duty of signing and issuing the "Order to Report" for such civilian work.

Had the Government here failed to make a showing of this kind, the question would be presented whether this holding of *Brede II* should be adhered to. A cogent argument can be made that it is implicit in a board determination as to availability and appropriateness of civilian work coupled with a request for approval and authorization by the Director, that the board intends thereby that if such approval and authorization is received, the registrant is required to report for such work.

■ But we need not here reach that question. Accepting this holding of *Brede II*, we conclude that the Government's showing in this case as to the consistent administrative practice of the Hughes' local board was such that the trial court was warranted in finding that what the board did, when it did it, represented the critical exercise of its administrative judgment that, if approval and authorization were obtained, Hughes was required to report for the specified work.

The Government was unable to prove that the local board, at the close of its August 9, 1966 meeting, expressly deter-

---

8. After the local board processed Hughes' case, the National Director amended Local Board Memorandum No. 64 to provide that the local board's determination as to availability and appropriateness of civilian work shall " * * * include a statement that the local board authorizes the *issuance* of such work order if the type of work is approved by the Director. * * * " (Emphasis supplied.)

9. These arguments by Hughes are that a conviction founded upon an "implied conditional order" would violate constitutional and statutory provisions; the concept of an "implied conditional order" is unconstitutionally vague; the concept of an "implied conditional order" violates the express terms of the selective service regulations; by introducing testimony of an "implied conditional order," the Government is attempting to impeach its own evidence; and the purported proof of an "implied conditional order" is a fatal variance between the indictment and the proof.

mined that the clerk should, upon receiving the Director's authorization, issue an "Order to Report" to Hughes. However, it did show, through the testimony of two witnesses, that it was the consistent intention of the board in all such cases that its determination of availability and appropriateness of specific work constitute an order that the I–O registrant report for the specified work if approval and authorization is received. These witnesses, whose knowledge of the practices and procedures of this board was not questioned, also testified that the board regarded the actual issuance of the "Order to Report," as a ministerial function of the clerk authorized by the board's described determination and the Director's approval and authorization.[10]

 Finally, Hughes argues, if it be assumed that the clerk of the local board was authorized to issue the first "Order to Report," dated April 5, 1967, the clerk was in any event without authority to issue the second order, dated May 4, 1967. As stated above, Hughes was indicted for failing to report to the designated employer for civilian work on May 15, 1967. This is the day on which he would have been instructed to report to the employer had he appeared at the office of the local board in response to the May 4, 1967 order. The instruction to that effect was mailed to him on May 4, 1967, after he failed to appear at the board office.

In our view, the second order to report was authorized by the same board determination upon which the first order was based. The board determination did not fix an exact day on which the order to report must issue. The clerk apparently thought there was a possibility that Hughes had not received the first order, or the instructions mailed to him when he did not appear in

response to that order. Having failed to honor the first order, Hughes was not prejudiced by the ministerial action of the clerk in giving him another chance.

Affirmed.

---

10. It is true that one of these witnesses stated a number of times that an order for Hughes to report for civilian work was not made at the time of the August 9, 1966 meeting. The context clearly indicates, however, that while counsel, in examining the witness, was referring to a board determination, the witness was speaking of the document entitled "Order to Report," signed and issued by the clerk.