Peter WOLFF and Richard Shortt, Plaintiffs-Appellants,

v.

SELECTIVE SERVICE LOCAL BOARD NO. 16, Selective Service Local Board No. 66, and Col. Paul Akst, individually and as Director of the New York City Headquarters Selective Service System, Defendants-Appellees.

No. 213, Docket 30783.

United States Court of Appeals Second Circuit.

Argued Nov. 30, 1966.

Decided Jan. 30, 1967.

Robert Layton, New York City (Ralph Fine and Alan H. Levine, New York City, on the brief), for plaintiffs-appellants.

Ezra H. Friedman, Asst. U. S. Atty., New York City (Arthur S. Olick, Asst. U. S. Atty., and Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, on the brief), for defendants-appellees.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

MEDINA, Circuit Judge:

Peter Wolff and Richard Shortt, registrants of Selective Service Boards No. 66 in Queens County and No. 16 in New York County were classified II–S because of their status as full-time students at the University of Michigan. On October 15, 1965 these students and others participated in a demonstration to protest American involvement in Vietnam, at the offices of a Selective Service local board in Ann Arbor, Michigan. At the request of the New York City Director of Selective Service the local boards reclassified the two students I–A. The request was based upon the assertion that by participating in the demonstration the students became "delinquents" by reason of their alleged violation of Section 12(a) of the Universal Military Training and Service Act. Claiming that the local boards acted wholly without jurisdiction and in violation of their First Amendment rights of free speech and assembly and of their Sixth Amendment rights as well, Wolff and Shortt brought this action against the local boards and the Director to bring about a return of their student deferments. On motion, based upon the allegations appearing on the face of the complaint, Judge McLean dismissed the action for lack of "a justiciable controversy" and Wolff and Shortt appeal.

We disagree. The two local boards did act without jurisdiction, the record shows that attempts to secure relief within the Selective Service System would be futile, and the threat to First Amendment rights is of such immediate and irreparable consequence not simply to these students but to others as to require prompt action by the courts to avoid an erosion of these precious constitutional rights. Under this combination of circumstances an injunction could properly issue. But the question, whether the matter in controversy exceeds the value of $10,000 exclusive of interest and costs, not decided below, remains open and must be passed upon in due course.

I.

Section 12 of the Act[1] is a lengthy penal statute covering offenses commit-

1. Section 12(a) 50 U.S.C.App. § 462(a) :
Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty, and any person charged with such duty, or having and exercising any authority under said

ted by registrants and by members of local boards. Jurisdiction over these offenses is given to the United States District Courts. With respect to some of these offenses, however, such as the failure of any person knowingly to "fail or neglect or refuse to perform any duty required of him under or in execution of this title," to the extent that the statute affects registrants, the jurisdiction of the District Court is, in effect, concurrent with the administrative jurisdiction of the local boards. Thus a parallel clause of the regulations provides that if a registrant fails to produce certain requested information or to appear for questioning, he may under 32 CFR Section 1642.4(a) be declared a delinquent and classified or reclassified I–A. Also under Section 12 various draftees have been convicted in United States District Courts for failure to appear for induction. See United States v. Mitchell, 369 F.2d 323 (2 Cir. 1966) and United States v. Hogans, 369 F.2d 359 (2 Cir. 1966).

▮▮▮ The conduct of these New York students, registrants in Local Boards Nos. 16 and 66, in participating in the demonstration in Michigan on October 15, 1965 could, as Judge McLean assumed, be claimed to fall under another provision of Section 12 which makes it a federal criminal offense for any person to "knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title" [2] and no regulation authorizes a draft board to declare a registrant a delinquent or to reclassify him for such action. As jurisdiction over offenses of this character

---

title [said sections], rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making, of any false statement or certificate regarding or bearing upon a classification or in support of any request for a particular classification, for service under the provisions of this title [said sections], or rules, regulations, or directions made pursuant thereto, or who otherwise evades or refuses registration or service in the armed forces or any of the requirements of this title [said sections], or who knowingly counsels, aids, or abets another to refuse or evade registration or service in the armed forces or any of the requirements of this title [said sections], or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title [said sections], or rules, regulations, or directions made pursuant to this title [said sections], or any person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title [said sections] or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses, shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment, or if subject to military or naval law may be tried by court martial, and, on conviction, shall suffer such punishment as a court martial may direct. No person shall be tried by court martial in any case arising under this title [said sections] unless such person has been actually inducted for the training and service prescribed under this title [said sections] or unless he is subject to trial by court martial under laws in force prior to the enactment of this title [said sections]. Precedence shall be given by courts to the trial of cases arising under this title [said sections], and such cases shall, upon request of the Attorney General, be advanced on the docket for immediate hearing.

2. According to appellants' brief the Delinquency Notice sent by Local Board No. 16 to Wolff stated:

1) You are hereby notified that your Local Board has declared you to be a delinquent because of your failure to perform the following duty or duties required of you under the selective service law:

October 15, 1965—Violation of Section 12–A of the Universal Military and Training Service Act as amended, as you interfered with the administration of Selective Service System of Local Board No. 85, Ann Arbor, Michigan.

is exclusively granted to the District Courts, we hold that the Local Boards lacked authority to decide that Wolff and Shortt were "delinquents" by reason of their violation of the terms of this portion of Section 12. Accordingly, as these two students have never been indicted or tried or convicted of this offense in a District Court, the two Local Boards, appellees, exceeded their jurisdiction by reclassifying the two students I–A.

■ There is nothing to prevent the prosecution of registrants or others for conduct by them in violation of either federal or state criminal laws, subject to such defenses as may be alleged and established. What we hold in this case is that it is not the function of local boards in the Selective Service System to punish these registrants by reclassifying them I–A because they protested as they did over the Government's involvement in Vietnam.

## II.

Despite the foregoing, the Government takes the position that the District Court properly concluded that it lacked the power to proceed in this matter and that the dismissal of the complaint may be affirmed on several grounds.

■ Irrespective of the existence of the power to do so, the courts, and particularly this Court, have been extremely reluctant to bring any phase of the operation of the Selective Service System under judicial scrutiny. The very nature of the Service demands that it operate with maximum efficiency, unimpeded by external interference. Only the most weighty consideration could induce us to depart from this long standing policy. But of all constitutional rights, the freedoms of speech and of assembly are the most perishable, yet the most vital to the preservation of American democracy. Historically, these preferred and paramount rights have continually come under attack from the best intentioned sources. And once the

erosion of these rights is permitted to begin, it is exceedingly difficult to halt and the intervening damage may be irreparable. Here it is the free expression of views on issues of critical current national importance that is jeopardized. On such topics perhaps more than any other, it is imperative that the public debate be full and that each segment of our society be permitted freely to express its views. Thus the allegations of the complaint in this case that the draft boards have unlawfully suppressed criticism must take precedence over the policy of non-intervention in the affairs of the Selective Service.

We turn, then, to the arguments of the Government that the District Court lacks the power to pass upon the issues.

## A.

### Subject Matter Jurisdiction

■ Appellants have invoked the general federal question jurisdiction of the District Court under 28 U.S.C. § 1331. As the controversy involves the alleged violation of rights arising out of the Federal Constitution and federal statutes, appellants' view must be correct unless some federal statute other than Section 1331 makes an exception in matters affecting the administration of the Selective Service Act. We are told that 50 U.S.C. App. § 460(b) (3) which provides that "the decisions of such local board shall be final" is such a statute. But it is difficult to understand how the Government can so argue at this date in the light of the express rejection of such a construction of Section 460(b) (3) in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). In that case the Supreme Court noted that the "authority of the local boards" is "circumscribed both by the Act and by the regulations" and is "limited to action 'within their respective jurisdictions.'" Thus the Court concluded that "it is only orders 'within their respective jurisdictions' that are made final." 327 U.S. at 120, 66 S.Ct.

at 426. Regarding Section 460[3] the Court explained:

> The provision making the decisions of the local boards "final" means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. 327 U.S. at 122–123, 66 S.Ct. at 427.

The Government concedes, of course, that the courts have jurisdiction to review classification orders in criminal prosecutions or in an appropriate habeas corpus proceeding but it asserts that the courts lack the "power" to inquire into classifications at an earlier point. All of which seems to us to admit jurisdiction over subject matter and affect merely a quite different point, namely the presence of a justiciable controversy, a subject to which we shall now direct our attention.

## B.

### Justiciability

 The Government further argues that this case is not ripe for adjudication because appellants have failed to exhaust their administrative remedies and because they cannot demonstrate irreparable injury. The courts ordinarily will not adjudicate a matter which may become moot through subsequent action by the executive. Nor will the courts hear a cause when the action complained of has not caused or is not certain to cause injury to the complaining party. In other words, a federal court cannot render an advisory opinion.

 Thus in the usual run of Selective Service cases, the registrant must wait until he receives an induction order, and has either obeyed it or is prosecuted for refusing to obey it, before the courts may review his classification. This is so because, in nearly all cases, it is service in the armed forces itself, and not the mere classification, that constitutes the alleged injury. Thus, should it develop that for independent reasons such as physical disability the registrant is not actually wanted by the armed forces, he will never have sustained a legally redressible injury. Perhaps it is true that a mere adverse classification will cause a disarray of plans and emotional upset but this is an acceptable price to pay for the efficient functioning of the Selective Service and it has been universally held that such injury is not sufficient to entitle a registrant to pre-induction order relief.

But, while the general run of cases do not present a justiciable controversy, it does not follow that no case can. Here it is not relevant whether or not appellants will ever be inducted. The effect of the reclassification itself is immediately to curtail the exercise of First Amendment rights, for there can be no doubt that the threat of receiving a I–A classification upon voicing dissent from our national policies has an immediate impact on the behavior of appellants and others similarly situated.

---

3. 50 U.S.C.App. § 460(b) (3) reads in relevant part:

> Such local boards * * * shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title, of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe.

■ It has been held repeatedly that the mere threat of the imposition of unconstitutional sanctions will cause immediate and irreparable injury to the free exercise of rights as fragile and sensitive to suppression as the freedoms of speech and assembly and the right to vote. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Since it is the mere threat of unconstitutional sanctions which precipitates the injury, the courts must intervene at once to vindicate the threatened liberties.

Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), is very much in point. There a civil rights organization sought an injunction against various state officials against the threatened enforcement of a Subversives Control Law. It was alleged that the prosecution was being conducted without any real expectation of success and was in fact a deliberate harassment of the plaintiff. A three-judge District Court dismissed the complaint on the ground that there had been no showing of irreparable injury to federal rights and that the case was a proper one for abstention. Quite similarly to our case, the Supreme Court allowed that the inconveniences which normally accompany a prosecution were insufficient to invoke federal court intervention and that the rights of the appellants could ultimately be vindicated through the normal procedures. Nevertheless, the Court reversed the District Court and held, first, that irreparable injury had been alleged and, second, that abstention was not appropriate. Regarding the first point, the Court said:

[T]he allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's

disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury.

■ Moreover, the decision of the Supreme Court in Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965), wherein the District Court had found the statute in question not void on its face, makes it clear that the Dombrowski rationale is not to be limited to statutes which are unconstitutional per se. Certainly the justiciability of a given case cannot rest upon a distinction between a statute void on its face and a statute which is being applied in an unconstitutional fashion for the chilling effect of the illegal Government action is equally great.

Similarly in United States v. Wood, 295 F.2d 772 (5 Cir. 1961), the federal government secured an injunction under the Civil Rights Act of 1957 against a state criminal prosecution. The Government successfully contended that the mere threat of this prosecution so interfered with the exercise of basic constitutional rights that a legally cognizable injury had resulted.

Here the injury caused by the threatened impairment of appellants' constitutional rights is magnified by the uncertainty as to the standard which the Service has applied. As there is no statute or regulation to guide the local boards, the registrant cannot know whether sit-ins alone will be deemed a basis for reclassification or whether sidewalk demonstrations or even more remote conduct are to be included. See Note, Federal-Question Abstention, 80 Harv.L.Rev. 604, 613 (1967).

■ Where basic constitutional rights are imperiled, the courts have not required a series of injured parties to litigate the permissible scope of the statute or administrative interpretation but have nullified the unconstitutional action and required the Government to start in the first instance with a statute or interpretation that will not so overhang free expression that the legitimate

exercise of constitutionally protected rights is suppressed. See also NAACP v. Button, supra; United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). In our case intervention is especially appropriate because for reasons independent of the First Amendment the entire course of conduct of the appellee boards is illegal and cannot be saved by any amount of narrowing construction.

### C.

#### *Exhaustion of Administrative Remedies*

 Normally it is desirable not only that the administration function with a minimum of judicial interference but also that, when the administration does err, it be free to work out its own problems. But, as noted above, there are competing policies and when as here a serious threat to the exercise of First Amendment rights exists, the policy favoring the preservation of these rights must prevail.[4]

 Furthermore, the narrow facts presented on this appeal show clearly that no purpose would be served by relegating appellants to their administrative remedies.

Appellants were part of a larger group of demonstrators. Some of appellants' companions were similarly reclassified

I-A and have completed their appeals within the administration. The national appeal board has concluded unanimously that the reclassifications were valid and, further, the National Director of the Selective Service has stated repeatedly that the reclassifications were proper.[5] There are no facts which have been brought to our attention which would lead to a contrary result in appellants' case and we are most reluctant in a case of this importance to require appellants to proceed along the same futile path that others have trod before.[6]

 When there is nothing to be gained from the exhaustion of administrative remedies and the harm from the continued existence of the administrative ruling is great, the courts have not been reluctant to discard this doctrine. See McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); Glover v. United States, 286 F.2d 84 (8 Cir. 1961); Bullard Co. v. N. L. R. B., 253 F.Supp. 391 (D.D.C.1966).

### III.

We are well aware that many reported cases contain language, often by way of dictum as in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), relied upon below, to the general

---

4. In Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966), it was held that the courts had jurisdiction to review a decision of a state legislature not to seat one of its duly elected members when it was alleged that the action was taken to penalize the legitimate exercise of the freedom of speech. Of course that case arises in a different context from ours but it further establishes the principle that the judiciary must be prepared to intervene in areas normally left to the other branches of government, when the free exercise of First Amendment guarantees is jeopardized. That the Supreme Court is placing increasing stress on the protection of the exercise of First Amendment rights can scarce-

ly be doubted. See e. g., Time, Inc. v. Hill, 385 U.S. ——, 87 S.Ct. 534, 17 L.Ed. 2d —— (1967).

5. New York Times, Dec. 22, 1965. See also New York Times, Jan. 12, 1966 and Feb. 18, 1966.

6. Furthermore, it is not altogether clear that an alternative exists to this suit in which the legality of the administrative sanctions here imposed may be contested. Certainly should these appellants be found unfit for service for an unrelated reason or not be called to service at all, the merits of their claim can never otherwise be heard. Yet the chilling effect of the Government's sanction would persist unabated.

effect that the review of classification orders is possible only in criminal proceedings or on habeas corpus petitions. But we have discovered no case which contained the allegation that the classification by the board had the immediate effect of depriving the registrant of his First Amendment rights. Nor, in fact, have we discovered any case in which the board exceeded its jurisdiction as clearly as did the appellee boards in this case.

Wholly aside from the First Amendment considerations which we believe compel our intervention at this time, it has in the past been suggested that when a local board acts in flagrant disregard of the applicable regulations and thus in clear excess of its jurisdiction, the courts may intervene at any time to rectify the situation. Thus in Schwartz v. Strauss, 206 F.2d 767 (2 Cir. 1953), Judge Frank remarked that he had no doubt that a court would have jurisdiction to review a classification where on undisputed facts the board's lack of jurisdiction was manifest. On the merits, however, he found that the board had acted properly as a matter of law. And in Townsend v. Zimmerman, 237 F.2d 376 (6 Cir. 1956) Judge Stewart, now Justice Stewart, enjoined a threatened induction when it appeared clearly as a matter of law that the board had violated the regulations in issuing its order.

## IV.

▮ Because Judge McLean was of the opinion that this suit was not presently justiciable, he had no occasion to determine whether or not appellants could demonstrate the presence of the requisite amount in controversy. It is an unfortunate gap in the statutory jurisdiction of the federal courts that our ability to hear a suit of this nature depends on whether appellants can satis-

factorily show injury in the amount of $10,000 [7] but the fact remains and on remand the District Court must determine this question.

Reversed.

---

7. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp.Prob. 211 (1948) ; ALI, Study of the Division of Jurisdiction Between State and Federal Courts, 48–52 (Tent. Draft No. 4, 1966).