Norman Lloyd PETERSEN, Plaintiff,

v.

Ramsey CLARK, as Attorney General of the United States, et al., Defendants.

No. 47888.

United States District Court
N. D. California.

Jan. 23, 1968.

As Amended Jan. 29, 1968.

See also D.C., 285 F.Supp. 700.

Doris Brin Walker, Treuhaft, Walker & Burnstein, Oakland, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., Jerry K. Cimmet, Asst. U. S. Atty., for defendants.

## ORDER CONVENING THREE-JUDGE COURT

ZIRPOLI, District Judge.

Plaintiff alleges that his Selective Service Board committed numerous errors during the classification process. He claims that notifications were not sent as required by federal regulations and that the Board refused to consider the *Seeger* (United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)) definition of conscientious objector, refused to tell plaintiff about it, and required a belief in God before it would consider the status of conscientious objector as proper for plaintiff.

Plaintiff was ordered for induction. He then learned of the *Seeger* rule and requested renewed conscientious objector consideration. The Board refused to reconsider. Plaintiff requested an appeal, but the Board ordered him to report for induction. Plaintiff requested a form

to ask for civilian work in lieu of induction, but the Board would not mail it. Plaintiff alleges that at that hearing the members of the Board were hostile and prejudiced against his claim and that he was denied the rudiments of a fair consideration.

The complaint's prayer, as originally framed, asked several forms of relief, the thrust of which was to enjoin the induction until plaintiff received proper consideration of his conscientious objector claim. A three-judge court was requested. On January 16, 1968, argument was heard on the Government's motion to dismiss for lack of jurisdiction. During the argument, plaintiff's counsel's position was that this court had jurisdiction to enjoin the induction. When the court expressed its feeling that the Government's contention was sound, the court asked if plaintiff was making any claim that the denial of jurisdiction was unconstitutional. Plaintiff said, "yes", and was given leave to amend the complaint, adding an additional contention.

*Determining the Meaning of § 460(b) (3).*

First, the court considers the question of whether it has jurisdiction to enjoin an induction on facts such as those before it and whether a three-judge court would be required by the complaint as unamended. While plaintiff's memorandum of points and authorities setting forth the alleged procedural deprivations heaped upon the plaintiff may very well be a good brief in support of a judgment of acquittal should a criminal prosecution for failure to submit to induction be brought, only paragraphs VII and IX (part 2) really go to the question of this court's jurisdiction to review the situation at this time. The question of jurisdiction is the threshold question. Paragraph VII of the memorandum is refuted by the plain language of 50 U.S.C.App. § 460(b) (3), which reads:

§ 460. Selective Service System

\* \* \* \* \* \*

(b) \* \* \* \* \*

(3) \* \* \* No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local board, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. \* \* \*

■ Plaintiff claims that the court may, in advance of criminal prosecution, determine whether there have been procedural deprivations. The court holds that § 460(b) (3) is to the contrary. Plaintiff claims that he is not contesting "classification or processing". The court cannot fathom what he is challenging, if it is not that.

■ Paragraph IX (part 2) of the memorandum of points and authorities in opposition to the motion to dismiss claims that plaintiff should not be faced with a choice between criminal prosecution and induction. The court agrees with plaintiff's general principle that statutes which deprive the district courts of jurisdiction and which narrow the remedies for a right so drastically as to compel the choice between arrest or submission are to be construed narrowly. The court has construed § 460(b) (3) as narrowly as the language therein permits and holds that such is exactly the result intended by Congress. Carpenter v. Hendrix, 277 F.Supp. 660 (N.D.Ga. 1967), came to the same conclusion as this court: *Carpenter* said "Clearly, the court has no jurisdiction to consider or grant the relief sought by plaintiff at this point. Concededly, this leaves plain-

tiff, and others like him, a Hobson's choice: he may report for induction or raise his points as a defense to a criminal indictment * * *." Muhammad Ali v. Connally, 266 F.Supp. 345 (S.D. Tex.1967), decided before the enactment of the relevant part of § 460(b) (3), reached a similar conclusion.

■ The wisdom of the Congressional enactment which withdrew any jurisdiction this court might have had to grant the relief prayed for in the complaint as unamended is not for this court to determine. It is the conclusion of this court that there is no jurisdiction to grant the relief prayed for in the complaint. Pavloff v. Board No. 57, Civ. No. 47407, N.D.Cal. August 3, 1967, reached the same result. Furthermore, it is the holding of this court that no contention made in the complaint as unamended requires a three-judge court for its resolution or raises a substantial federal question which would justify a three-judge court. Cf., Del Bourgo v. Mansfield, Civ. No. 45849, N.D.Cal. February 23, 1967.

Plaintiff relies on United States v. Lybrand, 279 F.Supp. 74 (E.D.N.Y.1967). This court holds *Lybrand* to be distinguishable and inapplicable because it only held that there was certain jurisdiction in a *criminal* prosecution. Plaintiff also relies on Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2d Cir. 1967), which held that there was jurisdiction prior to induction to review classification. This court notes that *Wolff* was (1) decided prior to the enactment of the present § 460(b) (3), and (2) involved first amendment rights specifically, though the former distinction is of greater moment than the latter. If the argument is that § 460(b) (3) merely codified existing law, this court concludes that either (1) *Wolff* did not represent existing law in this circuit (even in a criminal case, a defendant was not permitted to challenge his classification if he did not actually report for civilian work in lieu of military service—he had to reach that "brink", United

States v. Sutter, 127 F.Supp. 109, 117 (S.D.Cal.1954); see also Bjorson v. United States, 272 F.2d 244 (9th Cir. 1960), cert. denied, 362 U.S. 949, 80 S.Ct. 859, 4 L.Ed.2d 867 (1960); Daniels v. United States, 372 F.2d 407 (9th Cir. 1967); Moore v. United States, 302 F.2d 929 (9th Cir. 1962), or (2) the argument is erroneous and Congress did indeed mean to restrict and exclude civil jurisdiction. Cf., Carpenter v. Hendrix, supra; Pavloff v. Board No. 57, supra.

Therefore, it is ordered that the complaint, as unamended, is dismissed with leave to amend.

*Determining Whether the Meaning of § 460(b) (3) Necessitates the Convening of a Three Judge Court.*

Having determined that § 460(b) (3) precludes review in this case, the court now turns to the question presented by plaintiff's complaint as amended pursuant to leave to amend granted above. The court interprets the amended complaint to seek an injunction against the statute (§ 460(b) (3)) because it is unconstitutional on its face given the construction of the statute this court has applied to it. By seeking an injunction against the invocation, by the Government, of § 460(b) (3), plaintiff hopes to remove the bar to this court's preinduction jurisdiction to review a classification and induction order which plaintiff contends was obtained in derogation of his right not to be deprived of liberty without due process.

The specific right involved is the following: A fifth amendment right not to be subjected to criminal prosecution in order to raise defenses to an order to report for induction. If the existence of that right raises a substantial federal question, then a substantial federal question exists whether the fifth amendment's due process clause simply did amend Congressional power under Article III of the Constitution to abolish the district courts and regulate jurisdiction in a plenary fashion. In short, plaintiff is arguing that there may be a constitu-

tional right to *have* a court to enforce rights *prior* to criminal prosecution.

Of Congressional power to control the jurisdiction of the United States District Courts, one leading commentator has said, "There is so much authority for the proposition that Congress is free to grant or withhold the judicial power that it might seem unnecessary to belabor the point. Yet lingering doubts remain." WRIGHT, FEDERAL COURTS (1963 ed.) § 10. In Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1942), the Supreme Court was faced with the question of whether Congress could channel Emergency Price Control Act disputes into a special Emergency Court. In upholding Congressional power to do so, the Court declared: "There is nothing in the Constitution which requires Congress to confer equity jurisdiction on any particular inferior federal court. * * * The Congressional power to ordain and establish inferior courts includes the power of 'investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction [from then] in the exact degrees and character which to Congress may seem proper for the public good.'" The Court specifically reserved the question whether a prohibition of all interlocutory relief in the federal district court is unconstitutional.

Two years later, the Court was faced with the question it reserved in *Lockerty*: namely, whether even a defense in a criminal case could be precluded. The Court said that if Congress chose to deprive litigants of the defense of unconstitutionality of a regulation in a criminal prosecution and to relegate them to an Emergency Court, no deprivation of due process existed. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The Court said, "The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff." 321 U.S. at 440, 64 S.Ct. at 674. And "Congress, through

its power to define the jurisdiction of inferior federal courts and to create such courts for the exercise of the judicial power, could, subject to other constitutional limitations, create the Emergency Court of Appeals, give to it exclusive equity jurisdiction to determine the validity of price regulations prescribed by the Administrator, and foreclose any further or other consideration of the validity of a regulation as a defense to a prosecution for its violation." 321 U.S. at 443, 64 S.Ct. at 676. "There is no constitutional requirement that that test be made in one tribunal rather than in another, so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process * * *." 321 U.S. at 444, 64 S.Ct. at 677.

But *Yakus* is not quite dispositive of the case before this court. In *Petersen*, the statute purports to limit the review of *all* courts, including the Supreme Court. In *Yakus*, the Court said, "No reason is advanced why petitioners could not, throughout the statutory proceeding, raise and preserve any due process objection to the statute, the regulations, or the procedure, and secure its *full* judicial review by the Emergency Court of Appeals *and this Court*." 321 U.S. at 437, 64 S.Ct. at 673. (emphasis added). In a draft case, as in *Yakus*, Congress restricted district court review pending the "administrative" process (whether it be by the selective service appeal system or by a challenge in the Emergency Court), *but* in a draft case, unlike *Yakus*, § 460(b) (3) purports to limit the Supreme Court's (and district court's) scope of review even in the criminal case. Hence, a draft case is not the same as *Yakus*, for in *Yakus*, the Court said, "The petitioners are not confronted with the choice of abandoning their businesses or subjecting themselves to the penalties of the Act before they have sought and secured a [full review and] determination of the Regulation's validity." 321 U.S. at 438, 64 S.Ct. at 674. In *Yakus*, if a person was

aggrieved by a regulation, he could obtain a full review in the Supreme Court *before* being subjected to criminal prosecution. Such is *not* the case in *Petersen,* and that distinction, in the opinion of this court, raises a substantial federal question sufficient to justify the convening of a three-judge court.

In *Yakus,* it was held proper to foreclose a defense in a criminal prosecution *only* on the ground that there had not been an exhaustion of the Emergency Court remedies. 321 U.S. at 447, 64 S.Ct. 660. *Yakus* does not therefore stand for the proposition that Congress can put a person to *any* grizzly choice Congress decides to impose. As the court has concluded above, the choice imposed by § 460(b) (3) is a more severe choice than imposed in *Yakus,* because a criminal prosecution *must* be chosen to get federal court review.

See also 1 Moore, Federal Practice ¶ 0.60[2] ("And the 'Congressional power to ordain and establish inferior federal courts includes the power "of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good." ' Certainly this latter proposition is generally true, although theories as to * * * *due process* * * * *may constitute peripheral qualifications upon the otherwise unlimited power of Congress* to withdraw, curtail or in some other manner qualify a jurisdictional grant." [emphasis added]); Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir. 1948) ("We think * * * that the exercise by Congress of its control over jurisdiction is subject to compliance with at least the requirement of the Fifth Amendment. That is to say, while Congress has the undoubted power to give, withhold, and restrict the jurisdiction of courts other than the Supreme Court, it must not so exercise that power as to deprive any person of life, liberty, or property without due process of law * * *."). In a classic exposition of the problem, Professor Henry M. Hart, Jr., wrote of Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), and Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946): [*Estep* explained *Falbo* as having been decided] "on the basis that the petitioner in failing to report for induction had failed to exhaust his administrative remedies. * * * They seemed to say that the existence of the remedy of habeas corpus saved the constitutionality of the prior procedure. That turns an ultimate safeguard of law into an excuse for its violation." Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362, 1381–1383 (1953) (in fairness, it should be added that the words are those of a hypothetical protagonist in a mythical dialogue). Arguably, of course, *Yakus* merely said the same thing; namely, that the failure to exhaust administrative remedies could be used to bar the defense in a criminal prosecution. 66 Harv.L.Rev. at 1367 n. 20. But the precise question then may be put, "May reporting for induction be made one of the steps in the exhaustion process in draft cases consistently with due process?" *Yakus* implied that such a choice (between giving up one's business [and by analogy, reporting for induction] and a criminal violation) *might* violate due process.

Nothing herein shall be construed to express any pre-judgment by this court of the ultimate issue. The court at this time merely believes that plaintiff has raised a substantial federal question.

■ For the reasons listed above, and for the reason specifically that this court thinks that the *Yakus* decision is distinguishable from the case at bar, and because the *Falbo* case did not decide the constitutional principle involved here,

It is ordered that a three-judge court be convened to fully resolve the issue in this case.