**UNITED STATES of America,**

v.

**Roger D. CARSON.**

**No. J–67–CR–11.**

United States District Court
E. D. Arkansas,
Jonesboro Division.

March 13, 1968.

Robert F. Fussell, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

Owens, McHaney & McHaney, Little Rock, Ark., for defendant.

JOHN E. MILLER, Senior District Judge.

## OPINION

On August 29, 1967, the Grand Jury for the Eastern District of Arkansas returned an indictment against the defendant, Roger D. Carson, charging him with a violation of 50 App.U.S.C. § 462 (Selective Service Act of 1948), in that he unlawfully, willfully and knowingly failed and neglected to perform a duty required of him under the Act, and that he neglected to comply with an order of the Local Board to submit to induction into the armed forces of the United States.

With the consent of the court the parties waived trial by jury, and the case was tried to the court on January 11, 1968. The defendant appeared in person and by counsel. The Government appeared by its counsel, the Assistant United

States Attorney for the Eastern District of Arkansas. Counsel agreed that the case could best be determined on consideration of the Selective Service file of the defendant and a stipulation of facts to be submitted, and that no witnesses would be called to testify. The file and stipulation are now before the court and the briefs have been submitted by the parties.

The ultimate question in the instant case has, in the opinion of the court, been decisively determined by the case of United States v. Seeger, (1965) 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733. However, this case calls for an unusual application of the rule announced in Seeger, and in this respect appears to be a case of first impression. For this reason the background facts, both substantive and procedural, as disclosed by the file and stipulation are being set forth rather fully.

The pertinent portions of the stipulation are as follows:

"2. Roger D. Carson is a member of the First Pentecostal Church of Jesus Christ located at Leachville, Arkansas. On December 10, 1965, Arkansas Local Board No. 16 of the Selective Service System in Jonesboro, Arkansas mailed to Roger D. Carson (hereinafter referred to as the registrant) SSS Form No. 100 (Classification Questionnaire). On page 4 of the Form 100, Mr. Carson claimed to be a conscientious objector by reason of his religious training and belief, and he requested the local board to furnish him with a special form for conscientious objectors (SSS Form 150). On December 20, 1965, the SSS Form 100, Classification Questionnaire, was returned by the registrant to the local board office. On the same day, the local board handed to the registrant SSS Form 150, Special Form for Conscientious Objector.

"3. On December 21, 1965, the local board classified the registrant 1-S-H until June 1, 1966 by a vote of two in favor and none against the classification. The classification of 1-S-H is for student deferment. On December 21, 1965 [the same day], the registrant was mailed Form SSS 110, Notice of Classification. * * * On the back of this form is information concerning the right to personal appearance and appeal. The registrant did not file a written request for a personal appearance or file a written notice of appeal with the local board.

"4. On December 30, 1965, the registrant returned SSS Form 150, Special Form for Conscientious Objector, to the local board. * * *

"5. On May 23, 1966, the registrant was sent SSS Form 127, Current Information Questionnaire, which was completed and returned to the local board on June 1, 1966.

"6. On June 6, 1966, the local board classified the registrant 1-A by a vote of three in favor and no votes against. Also on June 6, 1966, the local board mailed the registrant another SSS Form 110. The registrant did not file a written request for a personal appearance before the local board within ten days, nor did he file a written notice of appeal with the local board within ten days thereafter.

"7. On October 13, 1966, the local board mailed the registrant SSS Form 127, Current Information Questionnaire. On October 17, 1966, the registrant appeared at the local board office and returned this SSS Form 127. * * *

"8. On October 21, 1966, the local board classified the registrant 1-A-O by a vote of two in favor of said classification and no votes against. Also on October 21, 1966, the registrant was mailed another Form 110, Notice of Classification. He did not file a written request for a personal appearance before the local board within ten days after the mailing of the notice, nor did he appeal from the classification by filing a written notice of appeal within ten days after the mailing of his notice of classification.

"9. On November 25, 1966, the registrant was mailed SSS Form 223, Order to Report for Armed Forces Physical Examination, giving a reporting date of December 13, 1966. On December 22, 1966, the registrant was mailed DD Form 62, which is Statement of Acceptability for Induction into the Armed Forces.

"10. On April 13, 1967, the registrant again was mailed SSS Form 127, Current Information Questionnaire, which was completed and returned by the registrant on April 19, 1967.

"11. On June 23, 1967, the local board mailed the registrant SSS Form 252, Order to Report for Induction, stating that the registrant was to report for induction on July 12, 1967.

"12. On July 12, 1967, the registrant reported for induction as ordered. However, after being informed of the provisions of the Universal Military Training and Services Act, he refused to take the symbolic one step forward to be inducted into the armed services."

The most important document contained in the defendant's Selective Service file (which is actually the basis for this entire controversy) is the SSS Form 150, which was completed by the defendant and filed with Local Board No. 16 at Jonesboro, Arkansas, on December 30, 1965. The relevant information contained in this form, known as the "C.O." or "Conscientious Objector Form," is as follows:

### Series I.—CLAIM FOR EXEMPTION

INSTRUCTIONS.—The registrant must sign his name to either statement A or statement B in this series but not to both of them. The registrant should strike out the statement in this series which he does not sign.

(A) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form. I, therefore, claim exemption from combatant training and service in the Armed Forces.

/s/ Roger D. Carson
(Signature of registrant)

(B) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces.

(Signature of registrant)

Under the provisions of section 6(j) of the Universal Military Training and Service Act, as amended, any person who claims exemption from combatant training and service in the Armed Forces of the United States because he is, by reason of religious training and belief, conscientiously opposed to participation in war in any form and such claim is sustained by the local board, shall, if he is inducted into the Armed Forces, be assigned to noncombatant service as defined by the President, or shall, if found to be conscientiously opposed to participation in such noncombatant service, in lieu of induction, be ordered by his local board, subject to regulations prescribed by the President, to perform for a period of twenty-four consecutive months such civilian work contributing to the maintenance of the national health, safety, or interest as the local board deems appropriate, and any such person who fails or neglects to obey such order of the local board shall be subject to imprisonment for not more than five years or a fine of not more than $10,000, or to both such fine and imprisonment.

(As indicated, the defendant signed statement "A"; however, he neglected to strike out statement "B" as per the instructions.)

### Series II.—RELIGIOUS TRAINING AND BELIEF

INSTRUCTIONS.—Every item in this series must be completed. If more space is needed use extra sheets of paper.

1. Do you believe in a Supreme Being? ☒ Yes ☐ No

2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.

Matthew 22:37 Thou shalt love God with all your heart – soul – mind – strength.

3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.

At the First Pentecostal Church of Jesus Christ.

6th & Lange St.

4. Give the name and present address of the individual upon whom you rely most for religious guidance.

Eld. C. E. George, P. O. Box 271, Leachville, Ark.

5. Under what circumstances, if any, do you believe in the use of force?

None.

6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.

No smoking – drinking – cursing – vulgar or obscene language –

no public bathing – no medical aid – attendance of worship services.

7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim made in Series I above? If so, specify when and where.

At various times from the pulpits in worship services.

On page 3 of the same form, under the heading "Participation in Organiza- tions," appears the following questions and answers:

2. Are you a member of a religious sect or organization? ☒ Yes ☐ No. If your reply to item 2 is "yes," complete items (a) through (e).

(a) State the name of the sect, and the name and location of the governing body or head if known to you.

First Pentecostal Church of Jesus Christ.

Leachville, Ark.

(b) When, where, and how did you become a member of said sect or organization?

1962 at Leachville, Ark. By birth of water baptism of Spirit (John 3:5)

(c) State the name and location of the church, congregation, or meeting where you customarily attend.

Same

(d) Give the name, title, and present address of the pastor or leader of such church, congregation, or meeting.

Charles E. George, Eld. P. O. Box 271, Leachville, Ark.

(e) Describe carefully the creed or official statements of said religious sect or organization in relation to participation in war.

We oppose the use of arms, or violence in any form.

We oppose medical aid – shots – vaccinations – in any form.

However, we do not oppose service as long as it don't conflict with our religious beliefs.

---

Upon receipt of this form the Local Board classified the defendant 1-A-O, which led to the defendant's subsequent call for induction and the return of the indictment.[1]

Prior to the submission of briefs the United States Attorney and counsel for the defendant joined in submitting a document containing what they deemed to be the issue involved and the respective con-

1. The various classifications for selective service registrants are set forth and explained in 32 C.F.R., Chapter XVI, Part 1622. The following are the provisions pertinent to the case at bar:

"§ 1622.10 Class 1–A: Available for military service.

"In Class 1–A shall be placed every registrant who has failed to establish to the satisfaction of the local board, subject to appeal hereinafter provided, that he is eligible for classification in another class.

"§ 1622.11 Class 1–A–O: Conscientious objector available for noncombatant military service only.

"(a) In Class 1–A–O shall be placed every registrant who would have been classified in Class 1–A but for the fact that he has been found by reason of religious training and belief, to be conscientiously opposed to combatant training and service in the armed forces.

"(b) Section 6(j) of title I of the Universal Military Training and Service Act, as amended, provides in part as follows:
"Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."
* * * * *
"§ 1622.14 Class 1–O: Conscientious objector available for civilian work con-

tentions of the parties. The "issue," as stated by counsel, is:

"Whether or not the defendant unlawfully, willfully, and knowingly failed and neglected to perform a duty required of him under and in execution of the Universal Military Training and Service Act by refusing to comply with an order of his Local Board to submit to induction into the armed forces of the United States."

Although somewhat broad, this is a correct statement of the issue in the case.

The Government's contentions are that as a "1-A-O" the defendant was bound to submit to induction pursuant to that classification; that the classification was correctly arrived at on the basis of the information supplied by the defendant in the SSS Form 150 (to-wit: signing statement "A" rather than statement "B" on page one of that form); and that, regardless of the Board's action, the defendant is now precluded from attacking the validity of that classification because there was in the file a factual basis for that classification, and because he failed to appeal from the Board's decision according to the procedure providing therefor in the statutes and regulations.

The defendant contends that the order to submit to induction was void because the 1-A-O classification given the defendant is invalid; that the 1-A-O classification was based on an erroneous legal theory; that the defendant, because of the information contained in his file (to-wit: the statements supplied in the SSS Form 150 relative to the defendant's religious objection to medical aid and inoculation), should have been classified "1-O" rather than "1-A-O"; and that because the de-

cision of the Board was based on an error of law, the defendant is not bound by his failure to appeal.

■ It is unquestioned that if the defendant had been correctly classified 1-A-O, he was legally bound to submit to induction, 32 C.F.R., Chapter XVI, § 1622.11, (see footnote 1, supra), and that his failure to submit to induction under such a circumstance would be a violation of the Act as charged in the indictment. Therefore, the court must determine whether this classification is erroneous, and if so, whether the defendant's failure to appeal prevents him from now raising that error as a defense to the offense charged.

In support of its position that the 1-A-O classification is correct, the Government relies primarily on the SSS Form 150 and the statute applicable to "conscientious objectors," 50 App. U.S.C., § 456(j), and in its brief stated:

"Congress did not intend under subsection (j) of Section 456, Title 50 App., Universal Military Training and Service Act to exempt those persons who, by reason of their religious training and beliefs are opposed to medical shots or vaccinations, from training and service in the armed forces of the United States."

The pertinent section of the Act reads as follows:

"Nothing contained in this title [sections 451–454 and 455–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief,

tributing to the maintenance of the national health, safety, or interest.

"(a) In Class 1–O shall be placed every registrant who would have been classified in Class 1–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces.

"(b) Section 6(j) of the Universal Military Training and Service Act, as amended, provides in part as follows: "Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

is conscientiously *opposed to participation in war in any form.* Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title [said sections], be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) [section 454 (b) of this Appendix] such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title [462 of this Appendix], to have knowingly failed or neglected to perform a duty required of him under this title * * *." [2] (Emphasis added).

■■ Exemption from combatant or noncombatant service in the armed forces on the grounds of conscientious objection is not derived from any constitutional right, but rather is a matter of congressional grace; exemption is actually a privilege rather than a right. See Uffleman v. United States, (9 Cir. 1956) 230 F.2d 297; Brown v. McNamara, (D. C., N.J.1967) 263 F.Supp. 686. The exemption created by 456(j) was doubtlessly enacted in furtherance of the protection of religious freedom provided for in the First Amendment, but the Amendment itself does not require such an exemption. Because the exemption arose out of the "grace of Congress," the Government contends that the section should be construed to exempt only those who, in the words of the section, are "opposed to participation in war in any form"; and that because there is no "right" to exemption, those who are opposed to military service for other religious reasons may not complain merely because Congress did not provide for their exemption also.[3]

According to the defendant such a construction leaves the section open to constitutional attack under the First Amendment, but on a plane other than that mentioned above, namely, that to provide exemption for those religiously opposed to one aspect of service and not for those religiously opposed to a different aspect is to unconstitutionally discriminate in favor of one religion as against another. This is indeed a novel analysis of the problem; the court, however, believes the defendant is correct.

■ Any enactment of Congress which either directly or indirectly discriminates or effects discrimination among religions is unconstitutional. In Braunfield v. Brown, (1960) 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563, Chief Justice Warren, in speaking for the court, at page 1148 of 81 S.Ct. stated:

"[T]o hold unassailable all legislation regulating conduct which imposes solely an indirect burden on the observance of religion would be a gross oversimplification. If the purpose *or effect* of a law is to * * * discriminate invidiously between religions,

---

2. This section was amended in 1967 by Public Law 90–40, § 1(7), 81 Stat. 100; however, such amendments are not applicable here. See Title 50 App., § 456(j), (1967 Supp.).

3. It will be remembered that the defendant did indicate on the SSS Form 150 that he was opposed to participation in war in any form. He did not, however, *specifically* state that he was opposed to noncombatant military service. He was classified 1–A–O and ordered to submit to induction into the Army for noncombatant service.

that law is constitutionally invalid even though the burden may be characterized as being only indirect." (Emphasis added.)

The operative words in the section pertaining to the 1-O classification are: " * * * or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered * * * to perform * * * civilian work * *." The Government would have the court believe that this is but a restatement of the earlier words, "opposed to participation in war in any form."

To so construe the statute would be to declare it unconstitutionally discriminatory, and this the court will not do.

■ As the court reads the statute, those registrants who entertain sincerely held religious opposition to military service are to be classified 1-O and made subject to civilian service only. The statute does not limit the exemption to those who are "opposed to participation in war in any form" but provides exemption for all who are "conscientiously opposed" to combatant or noncombatant service.

■ The key to the solution is found in the wording of statement "B" on page one of SSS Form 150. This statement, which is to be signed by registrants conscientiously opposed to *any* military service, reads in part: " * * * I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces." To allow one registrant exemption because of his generally recognized religious opposition to participation in war and not to allow exemption for another registrant who is religiously opposed to service on another ground not so generally recognized would be to discriminate and to misconstrue section 456(j), because the difference in statement "A" and statement "B" does not lie in "opposition to participation in war." These words appear in both statements.

■ Referring now to the defendant's claim for exemption, the basis for that claim is that, as an inductee, the defendant will be forced to submit to medication and vaccinations to which he is conscientiously opposed. With respect to this, the Government contends that any medication which might be forced on the defendant after induction is unrelated to Selective Service and is a matter to be taken up between the military and the defendant when the occasion arises. In its brief the Government states: "Once inducted into the armed forces, the military has jurisdiction to hear and determine questions in conscientious objectors' cases involving members of the armed services." This is true. However, it applies with equal force to those who object to participation in war, and the Government certainly would not contend that objection to participation in war is a matter solely within military jurisdiction. The proposition that participation in war is not a necessary incident of combatant service cannot be seriously advanced. The question of submission to medicine and vaccination is not so certain, but here the defendant offers uncontroverted evidence that he will be subjected to medical aid.[4]

The Government also contends that it has been held that freedom from compulsory immunization is not a constitutional right and therefore not a valid ground for exemption. It will be remembered, however, that the entire scheme of exemption is unrelated, directly at least, to constitutional rights, but is, as the Government stated in its brief, a matter of congressional grace. The question is not whether Congress can constitutionally subject the defendant to immunization, but whether to do so would be to discriminate against his religion in view of other congressional action or inaction.

The Government further contends that the Act does not recognize an exemption based on any religious beliefs, practices, or the fact that military service will interfere with one's religious beliefs or

4. Army Regulation 600–20, ¶ 48, sets forth certain instances where medical care may be performed "with or without the member's permission."

activities, citing Tomlinson v. United States, (9th Cir. 1954) 216 F.2d 12, cert. den. 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755. Tomlinson held that the Act does not recognize objections to service based on the fact that service would interfere with the *practice* of the registrant's religion. The court does not disagree with this holding. However, here the defendant does not claim that induction would interfere with his religious activities, but, like those opposed to participation in war in any form, claims that he will be required to participate in certain activities contrary to his religious principles.

There may be those who would interpret the foregoing statements of the court as opening the door for "draft dodgers" by allowing exemption for any and all asserted religious beliefs. Such a conclusion is unjustified and could only result from a failure to consider all of the legal aspects of exemption. The primary question in any "conscientious objector" case is, in the opinion of the court, whether the asserted objection is, in fact and in law, "conscientious" and made in good faith. Here the Government has not questioned the bona fides of the defendant's claim but, rather, has relied on its contention that the claim itself is no basis for exemption. The defendant's file indicates that the Local Board did not question the sincerity of his claim. He was never called to appear before the Board, and because he was classified 1-A-O rather than 1-A, it appears that the Board felt whatever religious beliefs the defendant entertained were genuine.

In United States v. Seeger, supra, the Supreme Court set forth a rather exhaustive analysis of the following statutory language:

"Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

Speaking for the Court, Mr. Justice Clark, 380 U.S. at page 176, 85 S. Ct. at page 859, said:

"Under the 1940 Act it was necessary only to have a conviction based upon religious training and belief; we believe that is all that is required here. Within that phrase would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

The Government has not undertaken to prove that the defendant's asserted belief does not meet this test, which is, in the final analysis, the test for any conscientious objection to military service whether it be directed against participation in war, submission to medical aid, or any other aspect of military service.

This brings the court to a consideration of the effect of the defendant's failure to appeal the Local Board's decision classifying the defendant 1-A-O. As previously indicated, on the SSS Form 150 the defendant signed statement "A", left statement "B" untouched, and stated elsewhere in the form that he was religiously opposed to medical aid and shots. The Local Board then classified the defendant 1-A-O (see footnote 1, supra), and the defendant did not appeal from this decision.

The Government contends that the defendant's failure to appeal precludes him from raising as a defense any asserted error on the part of the Local Board. A leading case in this area is Glover v. United States, (8 Cir. 1961) 286 F.2d 84, in which most of the major cases involving the question are analyzed. At page 88 the court stated:

"As a general rule, a defendant in a Selective Service prosecution may not, as a defense to the criminal charges,

collaterally attack his classification unless he has exhausted the administrative remedies provided by the Selective Service Act and pertinent regulations."

The Government would have the court follow the general rule in this case. In Glover the court made references to several other cases illustrating exceptions, in which the rule was relaxed. Glover itself presented one such exception. There, because of the defendant's administrative appeals of earlier classifications, the court felt it would be unjust to bind him for failure to appeal his final classification. Another exception mentioned exists where, upon reviewing the entire file, it is evident to the court that there is no basis in fact for the classification. In such a case failure to exhaust his administrative remedies should not be fatal to the defendant.

Here, as the Government contends, there is a "basis in fact" for the defendant's classification—his signature below statement "A". The defendant does not claim that the file is devoid of a factual basis for the 1-A-O classification. Instead he urges another exception to the above quoted rule—where the error of the Board is one of law, the defendant need not exhaust his administrative remedies. The defendant contends that because he indicated his religious opposition to medical aid and shots on his SSS Form 150, the Board's failure to classify him as 1-O was an error of law. The court must assume that the Board had cognizance of these statements, and determined that they were not a legal basis for exemption. This, therefore, was an error of law.

In support of his position on this point the defendant cites Wills v. United States, (9 Cir. 1967) 384 F.2d 943, in which the defendant stood convicted of the same offense charged in this case. The defendant, who failed to appeal the decision of his Local Board, attacked the validity of his classification. On page 945 the court stated:

"At the outset we are faced with the contention of the Government that appellant is foreclosed from attacking his reclassification here by reason of his failure to exhaust administrative remedies through the taking of an appeal within the Selective Service System. Such was the holding of the District Court. Although we affirm the judgment of conviction, we disagree with the District Court on the foregoing point.

"In the first place, appellant's objection to his classification was not addressed to the area of administrative judgment. It did not pose a question upon which courts, bowing to special expertise, would regard the administrative determination as final, save only where basis in fact is lacking. His objection, founded upon a claim of constitutional right, was one on which courts have little reason to defer to administrative determination. The exhaustion rule loses much of its force in this area. Cf., Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 825 (2d Cir. 1967)."

The District Court is not an appellate court for reviewing draft board decisions. In cases involving disputed factual findings the scope of review is quite narrow, and if there is any basis in fact for the decision of the Board, a registrant's failure to appeal that decision would prevent his attacking it in the courts. However, there is no factual dispute here. The only question, on the basis of the file and stipulation, is whether the undisputed facts entitled the defendant to a 1-O classification. The experience of the administrative boards and agencies will generally render them better equipped than the courts to solve factual problems within their respective fields, but, as stated in Wills, supra, where the dispute is on a question of law, "the exhaustion rule loses much of its force * * *."

It is the opinion of the court that the defendant, Roger D. Carson, was illegally classified 1-A-O and that his failure to submit to induction pursuant to the order of the Local Board was not a violation of

50 App. U.S.C. § 462, as charged in the indictment. As a matter of law the defendant should have been classified 1-O.

Therefore judgment is being entered today declaring the defendant not guilty and dismissing the indictment.